1

2

3

4

5

6

7

8                  **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10   DANIEL SANDERS, CO-TRUSTEE          CASE NO. 10-CV-2142 JLS (NLS)
     OF DS/KSL SANDERS FAMILY
11   TRUST UDT DATED APRIL 28,           **ORDER: (1) GRANTING**
     1998; AND KAREN L. SANDERS          **DEFENDANT'S REQUEST FOR**
12   CO-TRUSTEE OF THE DS/KSL            **JUDICIAL NOTICE; (2)**
     SANDERS TRUST UDT DATED             **DISSOLVING OCTOBER 18, 2013**
13   APRIL 28, 1998,                     **ORDER; AND (3) DENYING**
                                         **PRELIMINARY INJUNCTION**
14                        Plaintiffs,
                                         (ECF Nos. 28, 33)
15        vs.

16

17   SUTTON FUNDING, LLC; THE
     BANK OF NEW YORK MELLON
18   TRUST COMPANY, N.A., AS
     GRANTOR TRUSTEE OF THE
19   PROTIUM MASTER GRANTOR
     TRUST; T.D. SERVICE COMPANY;
20   AND DOES 1–10, inclusive,

21                        Defendants.

22        Presently before the Court is Plaintiffs Daniel and Karen L. Sanders's

23   ("Plaintiffs") *Ex Parte* Motion for a Temporary Restraining Order ("TRO") to prevent

24   Defendants Sutton Funding, LLC ("Sutton"); The Bank of New York Mellon Trust

25   Company, N.A., as grantor trustee of the Protium Master Grantor Trust ("BNYM");

26   T.D. Service Company ("TDSC"); and Does 1 through 10, inclusive (collectively,

27   "Defendants"), as well as non-party Cal-Western Reconveyance LLC ("CWR"), from

28   selling or taking any other steps to deprive Plaintiffs of possession of the property at

779 Marposa Drive, Vista, California 92081.  (Mot. for TRO, ECF No. 28.)  Also before the Court are BNYM's Response in Opposition (ECF No. 31) and Request for Judicial Notice ("RJN") (ECF No. 33) and Plaintiff's Reply in Support (ECF No. 35). Oral argument was heard on this matter on November 1, 2013.  After reviewing the parties' arguments and the law, the Court (1) **GRANTS** BNYM's RJN; (2) **DISSOLVES** the October 18, 2013 Order; and (3) **DENIES** Plaintiffs' request for a preliminary injunction.

## BACKGROUND

Plaintiffs bring this action against Defendants asserting thirteen causes of action: (1) wrongful initiation of foreclosure in a nonjudicial foreclosure action in violation of California Civil Code § 2923.6 and California Commercial Code § 3502; (2) lack of standing to conduct a nonjudicial foreclosure sale in violation of California Commercial Code § 3301; (3) lack of standing to conduct a nonjudicial foreclosure sale in violation of California Civil Code § 2932.5; (4) lack of standing to conduct a nonjudicial foreclosure sale in violation of California Civil Code § 2923.5; (5) lack of standing to conduct a nonjudicial foreclosure sale in violation of California Civil Code § 2934a; (6) breach of the implied covenant of good faith and fair dealing; (7) violation of California Civil Code § 1708; (8) specific performance; (9) estoppel; (10) judicial estoppel; (11) violation of California Civil Code § 1573; (12) violation of California Business and Professions Code §§ 17200 *et seq.*, and 17500 *et seq.*; and (13) quiet title.  (Compl., ECF No. 1.)

This action concerns the disputed ownership and loan status of the property at 779 Marposa Drive, Vista, California 92081 (the "Property").  On July 2, 2007, Plaintiffs executed an adjustable rate Note (the "Note") and Deed of Trust (the "DOT") for the sum of $474,400.  (Mot. for TRO Ex. A, Ex. B, ECF No. 28.)  The DOT identifies Contrywide Home Loans, Inc. ("Countrywide") as lender; Recontrust Company, N.A. as trustee; and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee and beneficiary.  (*Id.* Ex. B at 2.)

1    On September 10, 2009, MERS assigned its interest under the DOT to Sutton.

2    (*Id.* Ex. C.)   The assignment was notarized on October 1, 2009, and recorded on

3    October 8, 2009.  (*Id.*)  On September 16, 2009, BNYM, acting through its attorney in

4    fact Barclays Capital Real Estate, Inc., dba HomEq Servicing ("Barclays"), substituted

5    TDSC as trustee.  (*Id.* Ex. D.)  The substitution was notarized on December 14, 2009,

6    and recorded on January 8, 2010.  (*Id.*)  Also on September 16, 2009, TDSC executed

7    and served a Notice of Default ("NOD") on behalf of beneficiary Sutton.  (*Id.* Ex. E.)

8    The NOD was recorded on October 1, 2009.  (*Id.*)  On January 5, 2010, TDSC executed

9    and served a Notice of Trustee's Sale ("NOS"), which it recorded on January 8, 2010.

10   (*Id.* Ex. F.)

11   On February 1, 2010, Plaintiffs filed an action in state court.  (*Id.* 3.)   On

12   September 29, 2010, the San Diego Superior Court granted Plaintiffs' motion for a

13   preliminary injunction ("PI").  (*Id.* Ex. G.)  Also on September 29, 2010, Plaintiffs filed

14   a verified First Amended Complaint ("FAC") that Defendants subsequently removed

15   to federal court.  (Notice of Removal, ECF No. 1.)

16   Defendants noticed a sale of the Property for November 4, 2010.  (Decl. of Ehud

17   Gersten in Supp. of ("ISO") Mot. for TRO ("Gersten Decl.") ¶ 10, ECF No. 28.)  On

18   October 29, 2010, Plaintiffs moved for a TRO and PI in federal court.  (*Id.* ¶ 11.)  On

19   November 2, 2010, this Court issued an Order to Show Cause ("OSC") why a TRO

20   should not issue.  (Mot. for TRO Ex. H, ECF No. 28.)  Also on November 2, 2010,

21   however, Plaintiffs petitioned for bankruptcy.  (Gersten Decl. ¶ 12, ECF No. 28.)

22   Accordingly, the proceedings in this Court were stayed (ECF No. 8) and the motion for

23   a TRO and PI was denied as moot (ECF No. 9).

24   On March 25, 2011, MERS assigned the DOT to BNYM.  (Mot. for TRO Ex. I,

25   ECF No. 28.)  This assignment was recorded on April 1, 2011.  (*Id.*)  On November 16,

26   2011, Sutton assigned the DOT to BNYM.  (*Id.* Ex. J.)  This assignment was recorded

27   on November 30, 2011.  (*Id.*)

28   On October 24, 2012, BNYM executed a Substitution of Trustee ("SOT")

1   substituting CWR as trustee.  (Resp. in Opp'n 9, ECF No. 31; RJN Ex. A, ECF No. 33.)

2   On October 29, 2012, CWR executed another NOD.  (Resp. in Opp'n 9, ECF No. 31;

3   RJN Ex. B, ECF No. 33.)  Both documents were recorded on October 31, 2012.  (RJN

4   Exs. A, B, ECF No. 33.)

5        This Court lifted the bankruptcy stay on September 25, 2013.  (ECF No. 18.)  On

6   September 27, 2013, CWR, in its capacity as trustee, executed and served an NOS

7   noticing a sale on October 27, 2013.  (Mot. for TRO Ex. K, ECF No. 28.)  On October

8   5, 2013, Plaintiffs obtained a Property Securitization Analysis Report ("PSAR") of the

9   loan and DOT.  (Gersten Decl. ¶ 17, ECF No. 28; *see also* Mot. for TRO Ex. L, ECF

10  No. 28.)  On October 15, 2013, Plaintiffs moved the Court to continue the TRO

11  requested in October 2010.  (ECF No. 23.)  On October 16, 2013, the Court denied the

12  motion on the grounds that the TRO was previously denied as moot.  (ECF No. 25.)

13  Plaintiffs subsequently filed the present motion on October 18, 2013.  (ECF No. 28.)

14  On October 18, 2013, this Court issued an Order staying the sale of the Property until

15  a hearing could be heard on Plaintiffs' motion.  (ECF No. 30.)

16                                **LEGAL STANDARD**

17       Temporary restraining orders and preliminary injunctions are governed by the

18  same standard.  *See* Fed. R. Civ. P. 65(a), (b).  "A plaintiff seeking a preliminary

19  injunction must establish that he is likely to succeed on the merits, that he is likely to

20  suffer irreparable harm in the absence of preliminary relief, that the balance of equities

21  tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res.*

22  *Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Sierra Forest Legacy v. Rey*, 577

23  F.3d 1015, 1021 (9th Cir. 2009).  Although all four factors must be met, they operate

24  on a sliding scale.  Thus, "the elements of the preliminary injunction test are balanced,

25  so that a stronger showing of one element may offset a weaker showing of another."

26  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  "For

27  example, a stronger showing of irreparable harm to plaintiff might offset a lesser

28  showing of likelihood of success on the merits."  *Id.* at 1131.  Generally speaking,

however, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted). If it appears that there is "virtually no chance" that the plaintiff will prevail on the merits, an injunction may not issue, no matter how severe or irreparable the injury. *Grinols v. Electoral Coll.*, No. 12-cv-02997-MCE-DAD, 2013 WL 211135, at *2 (E.D. Cal. Jan. 16, 2013). Ultimately, a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citation omitted).

## ANALYSIS

To prevail, Plaintiffs must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. For the reasons stated below, the Court finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits, and therefore the Court **DENIES** Plaintiffs' request for a PI. The Court addresses each claim in turn.

## I.    Request for Judicial Notice

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Judicially noticed facts often consist of matters of public record." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citations omitted); *see also W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). While "a court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not, however, take notice of "the truth of the facts cited therein." *Marsh v. Cnty. of San Diego*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

BNYM asks the Court to judicially notice the following documents: (1)

Substitution of Trustee, Doc. No. 2012-0674028, recorded in the San Diego County Recorder's Office on October 31, 2012; (2) Notice of Default, Doc. No. 2012-0674029, recorded in the San Diego County Recorder's Office on October 31, 2012; (3) Notice of Trustee's Sale, Doc. No. 2013-0600937, recorded in the San Diego County Recorder's Office on October 3, 2013; (4) Declaration of Amanda Baladad, filed by BNYM on August 31, 2010, in the San Diego Superior Court action; and (5) Declaration of Daniel Sanders, filed by Plaintiffs on July 12, 2010, in the San Diego Superior Court action. (*See generally* RJN, ECF No. 33.)  All of these documents are available to the public and are certified and maintained by an official office.  Their accuracy cannot therefore be reasonably disputed.  Accordingly, the Court **GRANTS** BNYM's RJN as to all five documents.  However, the Court does not at this time take notice of the truth of the facts asserted therein.

## II.    Likelihood of Success on the Merits

### A.    *Tender*

As an initial matter, BNYM contends that Plaintiffs are foreclosed from pursuing their claims because they have not tendered the outstanding balance of their loan. (Resp. in Opp'n 17, ECF No. 31.)  Plaintiffs counter that they are excused from the tender requirement because imposing the requirement would be inequitable in light of their allegations that BNYM lacks the right to foreclose.  (Reply ISO Mot. for TRO 3–4, ECF No. 35.)  The Court finds that Plaintiffs are excused from pleading tender.

"Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt." *Montoya v. Countrywide Bank*, No. C09-00641 JW, 2009 WL 1813973, at *11 (N.D. Cal. June 25, 2009) (citing *Karlsen v. Am. Savings & Loan Ass'n*, 15 Cal. App. 3d 112, 117 (1971); *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984)); *see also Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112 (2011) ("Because the action is in equity, a defaulted borrower who seeks to set aside a trustee's sale is required to do

equity before the court will exercise its equitable powers.").

However, courts have held that the tender requirement does not apply when a plaintiff challenges the beneficial interest held by the defendant, rather than the procedural process of the foreclosure itself.  See *Johnson v. HSBC Bank USA, Nat'l Ass'n*, No. 3:11-cv-2091-JM-WVG, 2012 WL 928433, at *3 (S.D. Cal. Mar. 19, 2012) (holding that the tender requirement does not apply where the plaintiff "is not challenging Defendants' compliance with the foreclosure law, but is claiming that defendants did not properly receive the assignment of their loan"); *Vogan v. Wells Fargo Bank, N.A.*, No. 2:11-CV-02098-JAM-KJN, 2011 WL 5826016, at *7–8 (E.D. Cal. Nov. 17, 2011).  Indeed, enforcing such a requirement in circumstances where the plaintiff challenges the defendant's claim to the debt would make little sense, for if the defendant truly has no legally enforceable interest in the property at issue, then the plaintiff has no obligation to pay the debt.  *See Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997) ("[I]f the action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt.") (citation omitted).  Accordingly, because the gravamen of Plaintiffs' Complaint attacks BNYM's legal interest in the underlying debt, the Court finds that tender is not required here, and therefore Plaintiffs' failure to plead tender is not fatal to their action.

## B.  First Claim: Wrongful Foreclosure Pursuant to Cal. Civ. Code § 2924 & Cal. Com. Code § 3502

Plaintiffs allege that Defendants have wrongfully initiated foreclosure in violation of California Civil Code § 2924 because, without a legal right to foreclose on the Property, Defendants cannot enforce the power of sale clause.  (Compl. ¶ 54, ECF No. 1.)  Plaintiffs seemingly argue that Defendants lack the authority to foreclose because Defendants do not hold the Note.  (*Id.* ¶ 56.)  Plaintiffs also allege that Defendants failed to make presentment of the Note as required by California Commercial Code § 3502.  (*Id.* ¶¶ 58–61.)  BNYM argues that California law does not require it to possess the Note prior to instituting foreclosure proceedings.  (Resp. in Opp'n 11–12, ECF No. 31.)  BNYM also argues that the California Commercial Code is inapplicable to

1    nonjudicial foreclosures.  (*Id.* at 10–11.)  The Court agrees with BNYM.

2        Courts have consistently dismissed claims asserting that a foreclosure is invalid

3    because of a failure to possess or produce the original note prior to initiating foreclosure

4    proceedings.  *See, e.g., Quintero Family Trust v. OneWest Bank, FSB*, No. 09-CV-1561-

5    IEG (WVG), 2010 WL 392312, at *6 (S.D. Cal. Jan. 27, 2010) (rejecting a wrongful

6    foreclosure claim because producing an original note is not a prerequisite to foreclosure

7    in California); *Calderon v. Endres, APC*, No. 09-CV-00874-H (JMA), 2009 WL

8    1953400, at *3 (S.D. Cal. July 7, 2009) ("[Cal. Civ. Code § 2924 *et seq.*,] does not

9    require the entity initiating the foreclosure sale to provide evidence to the borrower or

10   a court establishing its right to do so, nor does it require that entity to have possession

11   of the note."); *see also Candelo v. NDex West, LLC*, No. CV F 08-1916 LJO DLB, 2008

12   WL 5382259, at *4 (E.D. Cal. Dec. 23, 2008); *Roque v. Suntrust Mortg., Inc.*, No. C-

13   09-00040 RMW, 2010 WL 546896, at *3 (N.D. Cal. Feb. 10, 2010); *Sicairos v. NDEX

14   West, LLC*, No. 08cv2014-LAB (BLM), 2009 WL 385855, at *2–3 (S.D. Cal. Feb. 3,

15   2009).

16       Further, courts generally agree that the California Commercial Code is

17   inapplicable to nonjudicial foreclosures, because the nonjudicial foreclosure procedures

18   provided in the California Civil Code are intended to be exhaustive.  See *Rodriguez v.

19   JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1297 (S.D. Cal. 2011) (citations

20   omitted)*; Quintero Family Trust*, 2010 WL 392312, at *6; *see also Sicairos*, 2009 WL

21   385855, at *2–3 (citing *Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994)); *McLaughlin

22   v. Wells Fargo Bank, N.A.*, No. SA CV 12-1114-DOC-(RNBx), 2013 WL 1164432, at

23   *5 (C.D. Cal. Mar. 19, 2013).[1]  Accordingly, the Court finds that Plaintiffs have not

24   shown a likelihood of success on the merits of their first two claims.

25   **C.    Third Claim: Lack of Standing to Conduct a Nonjudicial Foreclosure
         Pursuant to Cal. Civ. Code § 2932.5**

26

27       Plaintiffs allege that Defendants lack standing to conduct a nonjudicial

28   _____

     [1]Thus, Plaintiffs' second claim, regarding lack of standing to conduct a nonjudicial foreclosure
     pursuant to California Commercial Code § 3301, must also fail.

foreclosure of the Property because Sutton had not recorded the Assignment of DOT at the time nonjudicial foreclosure proceedings commenced. (Compl. ¶¶ 119–20, ECF No. 1.)  BNYM argues that California Civil Code § 2932.5 is inapplicable because the instant dispute involves the assignment of a deed of trust rather than a mortgage. (Resp. in Opp'n 12–13, ECF No. 31.)  The Court agrees with BNYM.

California Civil Code § 2932.5 pertains to situations in which the power to sell real property is given to a mortagee in an instrument intended to secure the payment of a loan.  In these circumstances, the power to sell "is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument," and may be exercised by the assignee so long as it is duly acknowledged and recorded.  *Id.*  However, this requirement pertains only to mortgages, and not to deeds of trust.  *See, e.g.*, *Caballero v. Bank of Am.*, No. 10-CV-02973-LHK, 2010 WL 4604031, at *3 (N.D. Cal. Nov. 4, 2010); *Selby v. Bank of Am.*, No. 09cv2079 BTM (JMA), 2010 WL 4347629, at *3 (S.D. Cal. Oct. 27, 2010).  The Court agrees with the reasoning in *Wadhwa v. Aurora Loan Services*, which noted the important differences between mortgages and deeds of trust and found that, in the absence of reasoned argument to the contrary, § 2932.5 does not impose a requirement that an assignment of deed of trust be recorded.  Civ. No. S-11-1784 KJM KJN, 2012 WL 762020, at *11–16 (E.D. Cal. Mar. 8, 2012).  Accordingly, the Court finds that Plaintiffs have failed to establish a likelihood of success on the merits with regards to their third claim.

### D.    Fourth Claim: Lack of Standing to Conduct a Nonjudicial Foreclosure Pursuant to Cal. Civ. Code § 2923.5

Plaintiffs allege that Defendants failed to comply with the notice of default requirements of California Civil Code § 2923.5. (Compl. ¶¶ 132–35, ECF No. 1.) BNYM argues that Plaintiffs fail to provide admissible evidence concerning Defendants' lack of communication with Plaintiffs such as would entitle them to injunctive relief. (Resp. in Opp'n 14, ECF No. 31.)  BNYM further alleges that Plaintiffs' declarations prove that Defendants were "in constant communication" with Plaintiffs during the four months leading up to the filing of the first NOD. (*Id.*)  The

Court finds that Plaintiffs have not established a likelihood of success on the merits of this claim, albeit for different reasons than provided by BNYM.

California Civil Code § 2923.5 imposes several requirements upon mortgagees, trustees, beneficiaries, or authorized agents regarding the filing of notices of default, one of which is that such entities must contact the borrower in person or by telephone to assess the borrower's financial situation and discuss options to avoid foreclosure. However, courts in this district have held that California's notice of default statute is preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq*. *See Rodriguez v. JP Morgan Chase*, 809 F. Supp. 2d 1291, 1295 (2011) (holding that § 2923.5 has been preempted by HOLA where the loan provider is a federally chartered savings bank at the time the loan was originated); *Quintero Family Trust*, 2010 WL 2618729, at *5–7; *Gutierrez v. PNC Mortgage*, Civil No. 10cv01770 AJB (RBB), 2012 WL 1033063, at *10 (S.D. Cal. Mar. 26, 2012); *Anguiano v. Bank of Am.*, No. 12-CV-1752-IEG (BLM), 2013 WL 485765, at *3 (S.D. Cal. Feb. 6, 2013). Because BNYM is a federally chartered bank, BNYM falls within the scope of HOLA. Accordingly, this claim is preempted, and the Court finds that Plaintiffs have failed to show a likelihood of success on the merits with regards to this claim.

**E.    Fifth Claim: Lack of Standing to Conduct a Nonjudicial Foreclosure Pursuant to Cal. Civ. Code § 2934a**

Plaintiffs allege that Defendants violated California Civil Code § 2934a because the 2009 SOT is defective. (Compl. ¶¶ 144–49, ECF No. 1.) BNYM argues that this claim is now moot because BNYM is no longer foreclosing on the basis of the documents executed and recorded in 2009 and 2010, but rather is foreclosing under the authority of documents recorded and executed since October 24, 2012. (Resp. in Opp'n 15, ECF No. 31.) Plaintiffs, however, allege that the later-recorded Assignments of DOT fail to establish that BNYM is now the beneficiary of the Note with the right to foreclose. (Mot. for TRO 4, ECF No. 28-13.) The Court agrees with BNYM.

California Civil Code § 2934a(1) provides that a new trustee may be substituted in place of the former trustee "by the recording in the county in which the property is

located of a substitution executed and acknowledged by . . . all of the beneficiaries under the trust deed, or their successors in interest." The substitution must contain the date of recordation, the name of the trustor, the instrument number of the deed of trust, and the name of the new trustee. *Id.* § 2934a(4). If these formalities have been complied with, "the new trustee shall succeed to all the powers, duties, authority, and title granted and delegated to the trustee named in the deed of trust." *Id.*

The Court agrees with BNYM that any claims regarding the alleged defects in the prior SOT to TDSC are moot, as CWR is now the purported trustee and the initiator of the present foreclosure proceedings. There is no reason to believe that these now irrelevant irregularities have prejudiced Plaintiffs in a way that taints these foreclosure proceedings. *See, e.g.*, *Ohlendorf v. Am. Brokers Conduit*, No. CIV.S-11-293 LKK/EFB, 2012 WL 718682, at * 13–14, (E.D. Cal. Mar. 5, 2012) (citing *Pedersen v. Greenpoint Mortg. Funding, Inc.*, CIV No. S-11-0642 KJM EFB, 2011 WL 3818560, at *21 (E.D. Cal. Aug. 29, 2011); *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 271–72 (2011)).

Plaintiffs, however, claim that the SOT to CWR is also defective because BNYM has failed to establish that it is the rightful beneficiary of the Note. Plaintiffs question the legitimacy of the chain of title establishing BNYM as beneficiary. (Mot. for TRO 4, ECF No. 28-13.) Plaintiffs argue that BNYM is not the beneficiary because the Assignments of DOT are contradictory, as both MERS and Sutton purportedly assigned the same interest to BNYM. (*Id.*) Further, Plaintiffs present a PSAR that purportedly establishes that the assignments from (1) MERS to Sutton, (2) MERS to BNYM, and (3) Sutton to BNYM were fraudulent, because the persons who executed the Assignments of DOT for the assignors lacked the authority to do so. (*Id.*)

Regarding the Assignment from MERS to Sutton executed on September 10, 2009, the PSAR claims that Joyce Nelson ("Nelson"), one of the signees for MERS, was in fact the Assistant Secretary of Barclays, the attorney in fact of BNYM. (PSAR 11, ECF No. 28-12.) In support of this contention, the PSAR provides an Ohio state

court opinion stating that Nelson attested in a 2010 affidavit that she held this title. (*Id.*) The PSAR also claims that the second signee, Tonya Blechinger ("Blechinger"), averred that she was a Barclays employee in an official document recorded in Iowa on October 25, 2007. (*Id.* at 10.)

Regarding the Assignment from MERS to BNYM executed on March 25, 2011, the PSAR claims that John Mallaber ("Mallaber"), one of the signees for MERS, was allegedly employed by Arbor Mortgage Servicing ("AMS"). (*Id.* at 12–13.) AMS purportedly was Barclay's foreclosure agent. (*Id.* at 12.)  In support of this assertion, the PSAR provides a printout of Mallaber's LinkedIn profile, which states that Mallaber is a current employee of AMS and has worked there since 2007. (*Id.* at 13.) Mallaber's profile does not mention that he has ever been employed by MERS or Countrywide. (*Id.*) And regarding the Assignment from Sutton to BNYM executed on November 30, 2011, the PSAR claims that Nick Matuszewski ("Matuszewski")—one of the signees for DHM Mortgage Servicing, the attorney in fact for Sutton—signed the Assignment "without power of attorney or legal representation," thus rendering the Assignment ineffective. (*Id.* at 14.)

Because these are allegations of fraud, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply.  Rule 9(b) requires a party to "state with particularity the circumstances constituting the fraud."  A plaintiff must accordingly include the "who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  And, where multiple defendants are accused of fraud, the claim "must inform each defendant of his alleged participation in the fraud." *Rincon v. Recontrust Co.*, No. 09cv937-IEG-JMA, 2009 WL 2407396, at *3 (S.D. Cal. Aug 4, 2009) (quoting *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

While Plaintiffs' allegations likely satisfy Rule 9(b)'s heightened pleading requirement, the Court finds that these allegations are nonetheless insufficient to justify the granting of an injunction.  Pleading allegations of fraud with particularity ensures

that the complaint will survive a motion to dismiss.  Merely overcoming this pleading threshold, however, does not establish a likelihood of success on the merits.  Because MERS had already purportedly transferred its interest at the time, the MERS to BNYM transfer is invalid and thus irrelevant to this analysis; thus, the allegations concerning Mallaber are unavailing.  Regarding the assignment from MERS to Sutton, that Nelson and Blechinger were allegedly employed by Barclays in 2010 and 2007, respectively, does not prove that neither was a MERS employee in 2009.  These employment dates are not necessarily contradictory.  People frequently change employers, and even careers.  And, regarding the assignment from Sutton to BNYM, Plaintiffs provide only the conclusory allegation that Matuszewski did not have the authority to sign for Sutton.  Thus, Plaintiffs fail to raise "serious questions" as to BNYM's status as beneficiary of the Note.  *Alliance for the Wild Rockies*, 632 F.3d at 1134–35.  Accordingly, because the transfers from MERS to Sutton and Sutton to BNYM comply with the procedural requirements of § 2934a, the Court finds that Plaintiffs have failed to establish a likelihood of success on the merits with regards to their fifth claim.

## F.    Sixth Claim: Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Defendants have breached the implied covenant of good faith and fair dealing on the basis of the foregoing claims as they apply to the "documents in this matter."  (Compl. ¶ 158, ECF No. 1.)  BNYM argues that Plaintiffs have not alleged a contract, much less a breach of any such contract.  (Resp. in Opp'n 16, ECF No. 31.)  BNYM also suggests that Plaintiffs attempt via this claim to protect their noncompliance with the terms of their loan, which is contrary to the purpose of the implied covenant.  (*Id.*)  The Court agrees with BNYM.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000) (citations omitted).  The implied covenant is "a method to protect the interests of the parties in having the contractual promises and purposes performed."

*Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1147 (1990). A claim for breach of the implied covenant requires the plaintiff to "show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Khan v. CitiMortgage, Inc.*, No. CV F 13-1378 LJO JLT, 2013 WL 5486777, at *9 (E.D. Cal. Sept. 30, 2013) (quoting *Careau & Co. v. Sec. Pac. Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)). The scope of the implied covenant "is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093–94 (2004) (citation omitted).

The Court finds, for the reasons already stated, that there are no irregularities in the documents relevant to the instant dispute. Plaintiffs have failed to show a likelihood of success on the merits with regards to the above claims, and thus there is no basis for the Court to find that Defendants acted with deliberate bad faith in executing these documents. Moreover, the Court finds that there have been no breaches of the implied covenant in the manner in which Defendants have performed under these documents. Plaintiffs have alleged no facts establishing otherwise. To the contrary, Plaintiffs are in breach of their own contractual obligations because they are in arrears in their loan payments. Thus, Defendants are entitled to initiate foreclosure proceedings, including issuing NODs and NOSs. Because the foreclosure proceedings are rightful, Plaintiffs cannot be legally injured by them. Accordingly, the Court finds that Plaintiffs have failed to establish a likelihood of success on the merits with regards to this claim.[2]

///

---

[2]Because the Court finds that Plaintiffs are not injured by rightful foreclosure proceedings, Plaintiffs also fail to establish a likelihood of success on the merits of their seventh claim, premised on violations of California Civil Code § 1708, which prescribes the injury of the person or property of another.

10cv2142

**G.     Eighth, Ninth, and Tenth Claims: Specific Performance, Estoppel, and Judicial Estoppel**

Plaintiffs' eighth claim alleges that BOA "promised the California Attorney General and the people of the State of California that it would modify Plaintiffs' loan according to the terms set forth in the agreement forged with the California Attorney General." (Compl. ¶ 165, ECF No. 1.)  However, Plaintiffs claim that BOA "breached its agreement to modify Plaintiffs' loan when it allegedly sold Plaintiffs' loan to another, instead of performing according to the agreement with the California Attorney General." (*Id.* ¶ 167.)  Plaintiffs' ninth claim alleges that Defendants knew of the Settlement and BOA's obligation to modify the terms of the loan, so Defendants lack the right to foreclose and are estopped from doing so. (*Id.* ¶¶ 171–73.) Plaintiffs' tenth claim alleges that BOA is judicially estopped from claiming a right to sell Plaintiffs' loan when it was obligated to modify the loan, and that, "[i]f necessary, Bank of America must repurchase Plaintiffs' loan for treatment according to the terms of its agreement with the California Attorney General." (*Id.* ¶¶ 177–78.) The Court finds that Plaintiffs fail to establish a likelihood of success on the merits of these claims.

BOA is a party to The National Mortgage Settlement (the "Settlement"), a settlement that was reached in *United States v. Bank of America Corporation*, 1:12-cv00361 RMC (D.D.C. 2012).  However, the sale or transfer of a loan is not a breach of the Settlement as set forth in the Settlement Term Sheet.  In fact, the Settlement explicitly contemplates and condones the transfer or sale of loans. *See, e.g.*, Settlement Section IV.M (titled "Transfer of Servicing of Loans Pending for Permanent Loan Modification").  Thus, Plaintiffs' allegations that BOA sold their loan are not sufficient to establish a breach of the Settlement.  Because Plaintiffs have not sufficiently pleaded a breach of the Settlement, their claims premised on alleged breaches of the Settlement must fail.  Accordingly, the Court finds that Plaintiffs have failed to show that they are likely to succeed on the merits of their eighth, ninth, and tenth claims.

///

10cv2142

1   *H.      Eleventh Claim: Violation of Cal. Civ. Code § 1573*

2   Plaintiffs allege that Defendants engaged in constructive fraud by falsely and

3   fraudulently representing the terms of the loan and their right to foreclose on the

4   Property. (Compl. ¶¶ 192–93, ECF No. 1.) Plaintiffs also claim that Defendants falsely

5   represented that they complied with California law in assuming from BOA the rights

6   arising from the loan. (*Id.* ¶ 197.) BNYM argues that Plaintiffs' claim for constructive

7   fraud fails because BNYM owed Plaintiffs no duty. (Resp. in Opp'n 19, ECF No. 31.)

8   The Court agrees with BNYM.

9   "To state a claim for constructive fraud" under section 1573, "a party must allege

10  (1) a fiduciary or confidential relationship; (2) an act, omission or concealment

11  involving a breach of that duty; (3) reliance; and (4) resulting damage." *Dealertrack,*

12  *Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006) (citing *Assilzadeh v. Cal.*

13  *Fed. Bank*, 82 Cal. App. 4th 399, 414 (2000); *In re Harmon*, 250 F. 3d 1240, 1249 n.10

14  (9th Cir. 2001)). Moreover, the facts supporting a cause of action for constructive fraud

15  must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b).

16  *See Sonoma Foods, Inc. v. Sonoma Cheese Factory*, 634 F. Supp. 2d 1009, 1021 (N.D.

17  Cal. 2007). Thus, the allegations must provide the "who, what, when, where, and how"

18  of the misconduct charged. *Vess*, 317 F.3d at 1106.

19  "[A]s a general rule, a financial institution owes no duty of care to a borrower

20  when the institution's involvement in the loan transaction does not exceed the scope of

21  its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savs. & Loan*

22  *Ass'n.*, 231 Cal. App. 3d 1089, 1096–97 (1991). Conducting a trustee's sale or a

23  foreclosure sale on property is absolutely within the domain of the usual money lender.

24  *See Ragland v. U.S. Bank Nat'l Ass'n*., 209 Cal. App. 4th 182, 207 (2012) (holding that

25  money lender did not exceed domain of usual money lender when it advised borrower

26  to not make loan payments in order to renegotiate loan, and later foreclosed on

27  borrower's property). None of Defendants have exceeded the scope of their

28  conventional roles in the foreclosure process. BNYM has acted in its normal role as the

beneficiary of the Note in seeking foreclosure of the Property, Sutton has acted in the usual manner for a loan servicer, and TDSC has not exceeded the general role of a foreclosure trustee.  Thus, it is unlikely that Defendants owe Plaintiffs a duty of care.

Moreover, Plaintiffs are unlikely to satisfy Rule 9(b)'s heightened pleading standard.  Plaintiffs' allegations of Defendants' purportedly constructively fraudulent acts are conclusory: Defendants "falsely and fraudulenly represented to Plaintiffs the terms of the loan, and the ability of Plaintiff to satisfy those terms" (Compl. ¶ 192, ECF No. 1); Defendants "falsely represented that it [sic] complied with California law in its [sic] assumption of the loan and the rights thereunder" (*Id.* ¶ 197); and "[g]uided by selfish interests in earning fees, Defendants concealed true facts from Plaintiffs so as to induce Plaintiffs to enter into a transaction" (*Id.* ¶ 200).  However, Plaintiffs provide no concrete examples of these purported misdeeds.[3]  Thus, it is highly unlikely that Plaintiffs have sufficiently pleaded their claim for constructive fraud.  Accordingly, the Court finds that Plaintiffs have not established a likelihood of success on the merits with regards to this claim.

## I.    *Twelfth Claim: Violation of Cal. Bus. & Prof. Code §§ 17200 et seq., & 17500 et seq.*

Plaintiffs allege that Defendants have violated California's Unfair Competition Law ("UCL") by misrepresenting their right to foreclose on the Property.  (Compl. ¶ 209, ECF No. 1.)  BNYM argues that this claim is moot because BNYM is no longer foreclosing pursuant to the first and allegedly defective NOD, but rather a second NOD that was not in existence at the time the Complaint was filed.  (Resp. in Opp'n 20, ECF No. 31.)  The Court agrees with Defendants.

Under the UCL, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act."  Cal. Bus. & Prof. Code § 17200.  However, for the reasons provided above, the Court finds that Defendants have a legal right to foreclose.  Thus,

---

[3]Originally BOA was a defendant to this suit, and there are several relatively concrete allegations regarding BOA's acts.  However, concrete allegations as to the remaining Defendants are sorely lacking.

in initiating foreclosure proceedings, Defendants have not misrepresented their right to foreclose on the Property in any unlawful, unfair, or fraudulent way. Accordingly, the Court finds that Plaintiffs have not established a likelihood of success on the merits with regards to this claim.

### J.      Thirteenth Claim: Quiet Title

Plaintiffs allege that Defendants seek to wrongfully foreclose on the Property without the right to do so, have not complied with the laws governing nonjudicial foreclosure, and have refused to accept payment from Plaintiffs and reinstate the loan. (Compl. ¶ 217, ECF No. 1.) The Court finds that Plaintiffs fail to establish a likelihood of success on the merits of this claim.

Section 760.020 of the California Code of Civil Procedure permits a party to bring an action "to establish title against adverse claims to real or personal property or any interest therein." Such an action to quiet title requires a showing of five elements, set forth in a verified complaint: (1) a description of the property; (2) the title as to which a determination is sought and the basis of that title; (3) the adverse claims against which a determination is sought; (4) the date as of which the determination is sought and, if that date is other than the date on which the complaint was filed, why; and (5) a prayer for the determination of the title against the adverse claims. Cal. Civ. Proc. Code § 761.020.

Because the Court finds that Defendants have the authority to foreclose on the Property and have complied with the relevant nonjudicial foreclosure procedures as set forth in the California Civil Code, however, the Court finds that Plaintiffs fail to sufficiently allege the basis for their title under § 761.020. Accordingly, Plaintiffs do not adequately plead the five elements required for an action to quiet title, and the Court finds that Plaintiffs have not established a likelihood of success on the merits of their quiet title claim.

### CONCLUSION

The Court **GRANTS** BNYM's RJN. For the reasons provided above, the Court

finds that Plaintiffs have not demonstrated a likelihood of success on the merits with regards to any of their thirteen claims. Plaintiffs, therefore, cannot establish entitlement to injunctive relief. *See Grinols*, 2013 WL 211135, at *2 (holding that if there is "virtually no chance" that the plaintiff will prevail on the merits, an injunction may not issue). Accordingly, the Court **DISSOLVES** its October 18, 2013 Order and **DENIES** Plaintiffs' request for a preliminary injunction.

**IT IS SO ORDERED**.

DATED:  November 12, 2013

Honorable Janis L. Sammartino
United States District Judge

10cv2142